# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NIGEL PARMS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Civil No.  **14-84 Erie** |
| v. | ) | |
| | ) | |
| PENNSYLVANIA DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| | ) | |
| *Defendant.* | ) | |

## COMPLAINT

Plaintiff Nigel Parms brings this action pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132 and the Rehabilitation Act of 1973, 29 U.S.C. § 794.  Mr. Parms is hearing impaired and unable to effectively communicate except through American Sign Language ("ASL").   While incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), Mr. Parms was subjected to persistent discrimination on the basis of his disability.  He was repeatedly sanctioned for failing to obey verbal orders and failing to stand when prison staff was performing a count of the prisoners, resulting in extensive confinement in disciplinary custody.  Furthermore, the lack of appropriate accommodations at SCI-Albion resulted in Mr. Parms' exclusion from numerous services, including meals, religious services and medical treatment, on the basis of his disability.

### JURISDICTION AND VENUE

1.      Plaintiff brings this action pursuant to 28 U.S.C. § 2201, 2202, the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., and Section 504 of the Rehabilitation Act, 29

1

U.S.C. § 794(a).

2.      This court has jurisdiction under 28 U.S.C. § 1331 over the claims arising under

42 U.S.C. § 12132 and 29 U.S.C. § 794.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise

to this action occurred in Erie County, Pennsylvania, within the Western District of

Pennsylvania.

## PARTIES

4.      Plaintiff Nigel Parms was incarcerated at SCI-Albion at all times relevant to this

Complaint.  He has since been released from custody and currently resides in Pittsburgh,

Pennsylvania.

5.      Defendant Pennsylvania Department of Corrections ("DOC") is an agency of the

State of Pennsylvania that operates SCI-Albion.  The principal office for the DOC is located in

Mechanicsburg, Pennsylvania.

6.      Defendant DOC receives federal funding.

## FACTS

7.      Mr. Parms has been deaf his entire life and his primary language is American

Sign Language ("ASL").

8.      ASL is the predominant sign language among deaf communities in the United

States, and is considered to be its own language, with different grammar rules from English.

9.      Mr. Parms is literate, but his understanding of the written word is imperfect

because English is his second language.

10.     Mr. Parms did not interact with any corrections officer ("C.O.") at SCI-Albion

who was proficient in ASL.

2

11.    At most, one or two corrections officers could rudimentarily spell in ASL.

12.    Mr. Parms has a limited ability to read lips, and only if he is familiar with the person speaking and if they speak slowly.

13.    SCI-Albion did and does not provide an interpreter to assist deaf inmates in their day-to-day communications with corrections officers or other prison officials.

14.    Mr. Parms therefore primarily communicated with corrections officers at SCI-Albion through the use of hand gestures.

15.    These gestures can, at times, be interpreted as aggressive, such as when Mr. Parms is frustrated and trying to get his point across.

16.    Some corrections officers would also pass notes to Mr. Parms.

17.    These notes were often difficult for Mr. Parms to comprehend or respond to effectually.

18.    Due to his inability to communicate with corrections officers, Mr. Parms was frequently unable to explain his version of an incident or confrontation.

19.    Furthermore, Mr. Parms was unable to communicate to corrections officers when other inmates were taking advantage of him because of disability.

20.    Mr. Parms experienced similar difficulties in communicating with other hearing inmates at SCI-Albion.

21.    Consequently, it was challenging for Mr. Parms to maintain even a congenial relationship with cellmates or other inmates.

22.    In 2012, Mr. Parms was housed in the F block at SCI-Albion.

23.    On F block, inmates are alerted of the time for chow (meals) and "count" through audible indicators alone, such as a bell or loudspeaker announcement.

24.     Unlike on F Block, some housing blocks at SCI-Albion have flashing lights to accompany the bell and/or moving message boards to announce these movement times.

25.     Inmates have five minutes to move from their cells to the dining hall after the bell for chow.

26.     If an inmate does not move to chow on time, they must skip that meal.

27.     Inmates also risk receiving a misconduct for failure to obey an order when they do not move on time for chow.

28.     Count is a procedure during which every inmate must stand at their cell door and be counted by guards.

29.     If an inmate does not stand for count, or otherwise interferes with count, that inmate can be issued a misconduct for failing to stand for count, and for refusing to obey an order.

30.     Mr. Parms is deaf and cannot hear, or otherwise perceive, the bell or other loudspeaker announcements used to inform inmates when it is time for chow and count.

31.     Mr. Parms' cellmates were generally unwilling to assist Mr. Parms by waking him up or otherwise indicating that the bell had rung for chow or count.

32.     Additionally, it is inappropriate for the DOC to condition its accommodations on the good will of other inmates.

33.     On numerous occasions during his stay at SCI-Albion, Mr. Parms was punished for failing to move to chow on time, failing to stand for count and failing to obey verbal orders.

34.     On at least one occasion, when Mr. Parms mentioned the issue to a corrections officer on his block, the corrections officer responded with a shrug and body language that indicated to Mr. Parms, "It's not my problem."

4

35.     On March 13, 2012, Mr. Parms realized it was past time for breakfast and attempted to go to chow.

36.     C.O. Garlick verbally informed him that he had missed the move for chow, which was called approximately 20 minutes previously.

37.     Mr. Parms attempted to inform C.O. Garlick that he did not hear the bell.

38.     C.O. Garlick ordered Mr. Parms to return to his cell.

39.     Mr. Parms proceeded to chow, not understanding this order.

40.     Mr. Parms was issued a misconduct for this incident.

41.     The unit manager sanctioned Mr. Parms with a reprimand and warning.

42.     Mr. Parms similarly missed breakfast on March 26, 29 and April 2, 2012 due to his not being informed when it was time to eat.

43.     On April 30, 2012, at approximately 11:45 A.M., Mr. Parms realized he had missed the bell for lunch and exited his cell to go to chow.

44.     C.O. Garlick informed him that he missed the move for chow, which was called at 11:14 A.M. that day.

45.     C.O. Garlick ordered Mr. Parms to return to his cell by holding up fingers and pointing to Mr. Parms' cell.

46.     Mr. Parms did not understand this order.

47.     C.O. Garlick issued Mr. Parms a misconduct based on his "refusal" to return to his cell.

48.     Mr. Parms did not eat lunch that day.

49.     The hearing examiner found Mr. Parms guilty of refusing to obey an order and sentenced him to 60 days in disciplinary custody ("called DC") and removal from his job.

5

50.     Disciplinary custody in the Restricted Housing Unit, ("RHU"), is the most restrictive housing status available at any DOC institution.

51.     Inmates refer to the RHU as "the hole."

52.     Inmates in the RHU are confined to their cell over 20 hours a day.

53.     Placement in the RHU results in the loss of all privileges, including access to telephones, access to reading materials, ability to attend religious services and reduced recreation time.

54.     There were several other occasions where Mr. Parms missed meals due to his inability to hear the chow bell.

55.     These incidents are representative of a continuing pattern and practice of discrimination against Mr. Parms based on his disability.

56.     During his time at SCI-Albion, Mr. Parms was issued at least 12 misconduct reports for failing to stand for count.

57.     As a result of these 12 incidents, Mr. Parms was sentenced to approximately 135 days (approximately 4 ½ months) in disciplinary custody and 60 days cell restriction.

58.     Mr. Parms failed to stand for count on these occasions because he was unable to hear the bell.

59.     Mr. Parms was additionally issued at least 10 misconducts for failure to obey a verbal order.

60.     Mr. Parms was sentenced to approximately 135 days of disciplinary time (approximately 4 ½ months) and 7 days loss of privileges as a result of these misconducts.

61.     Based on these incidents alone, Mr. Parms spent approximately 9 months in disciplinary custody.

62.     Upon information and belief, Mr. Parms may have received additional misconducts and sanctions that Plaintiff's counsel is unaware of.

63.     Mr. Parms' misconduct history prevented him from obtaining a job while incarcerated.

64.     SCI-Albion only provides an ASL interpreter for disciplinary hearings and some educational treatment programs.

65.     After a misconduct is issued, an inmate is placed in disciplinary custody until the disciplinary hearing.

66.     The interpreter was frequently unavailable for Mr. Parms' scheduled disciplinary hearings, delaying the hearing and increasing Mr. Parms' time in disciplinary custody.

67.     When Mr. Parms wanted to attend G.E.D. classes in math and reading, SCI-Albion informed him that it was too expensive to hire an interpreter for the classes.

68.     Other inmates attempted to interpret the classes for Mr. Parms; however, while they could sign conversationally, they were not certified interpreters and were unable to communicate the technical concepts.

69.     The information conveyed to Mr. Parms was too piecemeal for him to understand and learn so he subsequently stopped attending the classes.

70.     Mr. Parms experienced difficulty communicating with medical staff and seeking medical treatment because no interpreter was present.

71.     On multiple occasions, Mr. Parms was sent away from the medical department without receiving treatment due to the inability to communicate his needs to medical staff.

72.     The lack of interpreters also prevented Mr. Parms from meaningfully participating in religious services.

73.     Some housing blocks at SCI-Albion are equipped with TTYs, a text telephone, which allows deaf individuals to communicate with family and friends on the outside.

74.     F block did not have TTYs.

75.     Consequently, Mr. Parms was unable to communicate with friends and family during his incarceration, a privilege offered to non-disabled inmates.

76.     Mr. Parms filed numerous grievances and requests to staff about his difficulties as a deaf person without appropriate accommodation at SCI-Albion.

77.     Additionally, he repeatedly contacted DOC officials outside of SCI-Albion to bring this discrimination to their attention.

78.     In 2009, Mr. Parms received a response from the Staff Assistant for the Western Region of Pennsylvania.

79.     This response included comments that he should "rest assured that you are not being discriminated against because you are deaf" as "SCI-Albion is designated one of the institutions that is best equipped to accommodate" deaf individuals.

80.     Despite these pronouncements, Mr. Parms continued to be discriminated against at SCI-Albion, including extensive time in disciplinary custody and the denial of many services available to hearing inmates.

81.     The DOC has a duty to reasonably accommodate all disabled individuals in its care, including Mr. Parms.

82.     This duty includes an obligation to administer services in the most integrated setting possible.

83.     Failure to reasonably accommodate, provide services in an integrated environment, or punishing an individual as a result of their disability, are all forms of disability discrimination prohibited by the ADA.

## CAUSES OF ACTION

### Count I – Discrimination and Exclusion From Services of a Public Entity In Violation of the Americans With Disabilities Act

84.     Plaintiff Nigel Parms incorporates paragraphs 1 through 83 of this Complaint as if fully set forth herein.

85.     Defendant Department of Corrections discriminated against Plaintiff Nigel Parms and caused him to be excluded from participation in programs and denied access to services at SCI-Albion, a public entity, due to his disability, in violation of Title II and Title III of the Americans with Disabilities Act.

### Count II – Exclusion From Services of a Federally Funded Entity In Violation of the Rehabilitation Act

86.     Plaintiff Nigel Parms incorporates paragraphs 1 through 83 of this Complaint as if fully set forth herein.

87.     Defendant Department of Corrections caused Plaintiff Nigel Parms to be excluded from participation in programs and denied access to services at SCI-Albion, a public entity, due to his disability, in violation of Section 504 of the Rehabilitation Act.

### RELIEF DEMANDED

WHEREFORE, Plaintiff Nigel Parms respectfully requests the following relief:

1.     Declaratory judgment that Defendants violated Mr. Parms' statutory rights;

2.      An award of appropriate compensatory damages against Defendant in favor of

Mr. Parms in an amount to be determined by the finder of fact;

3.      Reasonable attorneys' fees and costs; and

4.      Such other relief the Court deems just and equitable.

Respectfully submitted,

/s/ Alexandra Morgan-Kurtz
Alexandra Morgan-Kurtz
Attorney I.D. No. 312631
Pennsylvania Institutional Law Project
429 Forbes Ave, Suite 800
Pittsburgh, Pa 15219
T: (412) 434-6175
amorgan-kurtz@pailp.org

*Attorney for Plaintiff Nigel Parms*

Date:  March 11, 2014

## VERIFICATION

I, Nigel Parms, verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.  I understand that false statements herein are subject to the penalty of perjury, pursuant to 28 U.S.C. §1746.

Executed on this _____5ᵗʰ_____ day of _____March_____, 2014.

Nigel Parms